UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

MICHAEL TAMMARO,                          :
                                          :
                    Plaintiff,            :        13cv6190
                                          :
          -against-                       :        OPINION & ORDER
                                          :
CITY OF NEW YORK, *et al.*,                :
                                          :
                    Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

WILLIAM H. PAULEY III, District Judge:

Michael Tammaro brings this pro se federal civil rights action against the City of

New York (the "City"), Detective Christopher Breslin, Minjak LLC, Jan Zonon, Jennifer Gatien,

one named and three unnamed New York Police Department property clerks, and four unnamed

Rikers Island corrections officers. The various claims that Tammaro alleges against a web of

defendants in the Third Amended Complaint ("Complaint") branch from Tammaro's March

2013 arrest for cashing false checks and subsequent convictions for grand larceny, forgery,

identity theft, and criminal possession of a forged instrument.[1] This Court stayed the claims

challenging the lawfulness of Tammaro's arrest and the seizure of his property pending the

disposition of his criminal conviction. (See ECF No. 104.) As such, those claims are not subject

to dismissal on the instant motion. In addition, Tammaro voluntarily dismissed his claims

---

[1]       Tammaro's certificate of disposition is not attached to the Complaint, but rather, to the Moving
Defendants' declaration in support of their motion. (Declaration of Kathleen D. Reilly in Support of City
Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 109 ("Reilly Decl."), Ex. B.) As
courts in this District have observed, however, this Court may on a Rule 12(b)(6) motion take judicial notice of
matters of public record—such as a certificate of disposition—under Federal Rule of Evidence 201. See, e.g.,
Mercano v. City of New York, 2017 WL 1969676, at *1 (S.D.N.Y. May 12, 2017); Monroe v. Myskowsky, 2014
WL 496872, at *1 (S.D.N.Y. Feb. 6, 2014).

against Minjak LLC and Zonon, who were the landlords of his apartment where he was arrested. (ECF No. 107.)

The City and Detective Breslin (together, the "Moving Defendants") move under Fed. R. Civ. P. 12(b)(6) to dismiss Tammaro's Fourth and Fourteenth Amendment claims arising from the NYPD's retention and destruction of property seized in connection with Tammaro's arrest. The Moving Defendants also seek to dismiss Eighth and Fourteenth Amendment claims stemming from abuse Tammaro allegedly suffered at the hands of Rikers Island corrections officers and other inmates while incarcerated. For the reasons that follow, the Moving Defendants' motion is granted as to the property claims against Detective Breslin and the NYPD property clerks, and denied as to (1) the property claims against the City to the extent that they arise out of the Fourteenth Amendment; and (2) the Eighth and Fourteenth Amendment prisoner abuse claims.

## BACKGROUND

The relevant facts are gleaned from the Complaint and Tammaro's opposition papers, which are presumed true for purposes of this motion. See Ceara v. Deacon, 68 F. Supp. 3d 402, 405 (S.D.N.Y. 2014) (explaining that on a motion to dismiss a pro se complaint, a court may consider materials outside the pleadings "to the extent that they are consistent with the allegations in the complaint," including "documents that a pro se litigant attaches to his opposition papers" (quotation marks omitted)).

I.      The Underlying Criminal Proceeding

On March 4, 2013, NYPD detectives arrested Tammaro—a fashion and celebrity photographer—at his Manhattan apartment based on a tip from Jennifer Gatien, a woman who had been living in Tammaro's apartment. (Compl. ¶¶ 1, 4–10.) After bringing Tammaro to the

precinct, Detective Breslin informed him that Gatien claimed that Tammaro had forged her

signature on three checks he cashed.  (Compl. ¶¶ 1, 10.)  Although Tammaro denied these

allegations, he was arraigned on March 5, 2013 and remanded into custody at Rikers Island,

where he remained incarcerated until July 26, 2016.  (Compl. ¶ 11-12, 37.)

II.     Seizure and Destruction of Tammaro's Property

On the heels of Tammaro's arrest and arraignment, Detective Breslin obtained a

warrant to search Tammaro's apartment.[2]  Pursuant to a search conducted on March 12, 2013,

Detective Breslin and other NYPD members seized various items that are the subject of this

motion, including eight external hard drives, two desktop computers, one laptop, four cellphones,

an iPad, an iPod, Tammaro's passport, and other documents.  (Compl. ¶ 17-18.)  While some of

these items were vouchered as investigatory evidence, other seized property was not listed on the

voucher, including some of the hard drives, the laptop, and the iPad.  (Compl. ¶¶ 20-21.)

Over the next few years, Tammaro embarked on a Kafkaesque odyssey to retrieve

his belongings.  Shortly after the seizure, Tammaro and his attorneys repeatedly asked the

prosecutor to return his property, both at court appearances and through off-the-record requests.

(Compl. ¶ 24.)  As early as December 10, 2013, the prosecution indicated that they intended on

using only a recovered checkbook at trial.  And at a hearing on March 28, 2014, the judge

presiding over Tammaro's criminal case instructed the prosecutor that if he did not intend to use

the property as evidence in the criminal case, then he should provide a district attorney's release

for Tammaro to retrieve his property.  (Compl. ¶¶ 24-25.)  Sometime after the March 28 hearing,

---

[2]      As alluded to, Tammaro disputes the legality of his arrest and the subsequent seizure of his property
following a search of his apartment—claims that are not the subject of this motion.  Accordingly, this Opinion &
Order does not detail the factual allegations relevant to those claims.

the prosecutor informed Tammaro's attorney that Tammaro could designate individuals to retrieve the property. (Compl. ¶ 26.) Although Tammaro designated three such individuals in late-September 2014—Maury DiMauro, Jason Lopez, and Jackie Harris—the prosecutor did not provide a district attorney's release until October 21, 2014. (Compl. ¶¶ 27-28.) The release indicated that the property was not needed as evidence and sanctioned its release to any authorized individual. (Compl. ¶ 27.)

The NYPD Property Clerk Division received the district attorney's release sometime in mid-November 2014. Armed with the release, DiMauro and Harris attempted to retrieve Tammaro's property from the NYPD's Manhattan Property Office at 1 Police Plaza. (Compl. ¶ 30.) The property clerk informed them that they needed to retrieve the property from the Pearson Place Warehouse in Long Island City. (Compl. ¶ 30.) Those attempts were also unsuccessful because Pearson Place Warehouse property clerk refused to release the property unless she first received authorization from Detective Breslin. (Compl. ¶ 31.) Subsequent efforts to reach Detective Breslin were unavailing. First, the property clerk contacted Detective Breslin to request release of the property and informed Harris that she would be contacted when Detective Breslin provided authorization—notification that never arrived. (Compl. ¶ 31, 33.) Attempts by DiMauro and Harris to reach Detective Breslin to authorize the release of Tammaro's property were similarly ineffective. (Compl. ¶ 32.) Finally, while incarcerated, Tammaro sent letters to the judge, Detective Breslin, and the prosecutor requesting the release of his property, but received no response. (Compl. ¶ 35.)

After his release from incarceration on July 26, 2016, Tammaro's attempt to retrieve his property from the NYPD's Manhattan Property Office was rebuffed because he now needed a new district attorney's release. (Compl. ¶¶ 37-38.) Separately, around August 16,

2016, Detective Breslin finally authorized the property clerk to release Tammaro's property. (Compl. ¶ 39.) But it was now too late. While Tammaro eventually secured a new district attorney's release around September 2016, the Pearson Place Warehouse property clerk informed him that his property—including all of the photographs that he had taken in his 25-year photography career—had already been destroyed by the NYPD almost one year earlier, on October 9, 2015. (Compl. ¶¶ 36, 41-42.) Tammaro alleges that throughout this entire ordeal, he was never informed that he could retrieve his property, of the procedure for retrieving his property, or that his property could be destroyed. (See Compl. ¶¶ 22, 33.) Moreover, he claims that he did not receive a copy of the property voucher until he attempted to recover his property on August 5, 2016, after being released from incarceration. (Compl. ¶ 22.)

III.     Tammaro's Treatment at Rikers Island

Tammaro also asserts constitutional violations by corrections officers while he was incarcerated at Rikers Island, which are principally premised on three categories of actions or omissions. First, Tammaro alleges that the corrections officers failed to protect him from repeated physical violence and verbal harassment from other inmates based on his race and sexual orientation. Although Tammaro reported these incidents to corrections officers and medical personnel, the corrections officers instead disclosed his sexual orientation to other inmates, exposing him to further violence. (Compl. ¶¶ 12-13.) Second, Tammaro claims that the corrections officers themselves verbally harassed him with homophobic slurs and physically assaulted him by shoving him into walls without provocation. (Compl. ¶ 13.) Finally, he avers that on one occasion, corrections officers discarded his belongings because of his sexual orientation. (Compl. ¶ 13.)

<u>LEGAL STANDARD</u>

The standards governing motions to dismiss under Rule 12(b)(6) are well-settled. To avoid dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. In resolving a motion under Rule 12(b)(6), a court must accept a plaintiff's allegations as true and draw all reasonable inferences in his favor. <u>Gonzalez v. Hasty</u>, 802 F.3d 212, 219 (2d Cir. 2015). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Mastafa v. Chevron Corp.</u>, 770 F.3d 170, 177 (2d Cir. 2014) (quotation mark omitted).

Where a plaintiff is proceeding <u>pro se</u>, courts liberally construe the complaint, which, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). This maxim applies with particular force when "the <u>pro se</u> plaintiff alleges that [his] civil rights have been violated." <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008). Thus, this Court affords Tamarro "special solicitude" by interpreting his complaint "to raise the strongest claims that it suggests." <u>Hardaway v. Hartford Public Works Dep't</u>, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted).

<u>DISCUSSION</u>

This Court construes the Complaint to assert Fourth and Fourteenth Amendment claims arising from the failure to release and subsequent destruction of Tammaro's property by

Detective Breslin, the NYPD property clerks, and the City of New York (the "Property Claims"), and Eighth and Fourteenth Amendment claims arising from his treatment by Rikers Island corrections officers while incarcerated (the "Prison Abuse Claims"). Because Tammaro asserts claims against government officials, this Court also considers whether any of the Defendants are entitled to qualified immunity. Where, as here, Moving Defendants raise qualified immunity in a Rule 12(b)(6) motion, the facts supporting qualified immunity must appear on the face of the complaint. See McKenna v. Wright, 386 F.3d 432, 435-36 (2d Cir. 2004). Accordingly, courts have noted judicial reluctance "to find that defendants are entitled to qualified immunity at the initial stages of the pleadings." Soto v. City of New York, 2015 WL 3422155, at *3 (S.D.N.Y. May 28, 2015) (quotation mark and citation omitted).

   The qualified immunity doctrine protects public officials "from claims for money damages arising from the performance of their duties." Ganek v. Leibowitz, 874 F.3d 73, 80 (2d Cir. 2017). Qualified immunity "attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" White v. Pauly, 137 S. Ct. 548, 551 (2017) (quotation marks omitted). Thus, the shield applies "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Whether a right is "clearly established" depends on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009). While there need not be a case directly on point for a right to be "clearly established," existing precedent "must have placed the statutory or constitutional question beyond debate."

White, 137 S. Ct. at 551 (quotation marks omitted); Dudek v. Nassau Cty. Sheriff's Dep't, 991 F.

Supp. 2d 402, 416 (E.D.N.Y. 2013) (noting that this determination "principally relies on

'whether or not the law was governed by controlling precedent of this Circuit'").

I.    Documents Considered

As an initial matter, this Court addresses Tammaro's opposition to various

documents submitted by Moving Defendants in support of their motion to dismiss.  Because a

motion brought under Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint," and

takes "no account of its basis in evidence, a court adjudicating such a motion may review only a

narrow universe of materials."  Goel v. Bunge, Ltd., 820 F.3d 554, 558-59 (2d Cir. 2016).

Accordingly, a court may generally only consider the "facts stated on the face of the complaint,

. . . documents appended to the complaint or incorporated in the complaint by reference, and . . .

matters of which judicial notice may be taken."  Concord Assocs., L.P. v. Entm't Props. Trust,

817 F.3d 46, 51 n.2 (2d Cir. 2016) (citation omitted).  However, "[e]ven where a document is not

incorporated by reference, the court may nevertheless consider it where the complaint 'relies

heavily upon its terms and effect,' which renders the document 'integral' to the complaint."

Chambers v. Time Warner, 282 F.3d 147, 153 (2d Cir. 2002).

As noted above, this Court takes judicial notice of Tammaro's certificate of

disposition for the limited purpose of providing background context.  See Reilly Decl. Ex. B.  In

addition, this Court takes judicial notice of the existence and filing of Tammaro's First Amended

Complaint and the documents attached thereto.  (See Reilly Decl. Ex. F.)  See also Eaves v.

Designs for Finance, Inc., 785 F. Supp. 2d 229, 244-45 (S.D.N.Y. 2011) (taking judicial notice

of previous iterations of the complaint "as matters of public record"); Reisner v. Stoller, 51 F.

Supp. 2d 430, 440 (S.D.N.Y. 1999) (noting that judicial notice may be taken of "matter of public

record, such as pleadings and court orders from previous litigation between the parties"). Finally, the Moving Defendants attach the Complaint that is the subject of this motion.

However, this Court declines to consider the other documents attached to the Reilly Declaration. First, the Moving Defendants attach two property vouchers that purportedly reflect the recovery, return, or destruction of certain items belonging to Tammaro. The Moving Defendants contend that these vouchers are integral to the Complaint because they document the disposition of property on which the Complaint is based. But while this may be so, the relevant inquiry is whether the Complaint "relies heavily on the terms and effect" of the vouchers. Chambers, 282 F.3d at 153. This Court concludes that it does not—indeed, the thrust of the Complaint is that Tammaro never received these vouchers. Because Tammaro cannot be said to have "rel[ied] on the terms and effect of [the voucher(s)] in drafting the complaint," the mere fact that he may have had notice or possession of the vouchers or that he mentioned the vouchers in the complaint is insufficient.[3] Chambers, 282 F.3d at 153; see also Goel, 820 F.3d at 559. This Court also declines to consider the trial transcript from plaintiff's criminal case because it is unnecessary to the disposition of this motion. Finally, the Moving Defendants attach a Notice of Claim filed by Tammaro that purportedly evinces Tammaro's knowledge of the procedures for recovering his property. But while the factual narratives in the Notice of Claim and the Complaint share a common core, the Complaint is devoid of any mention of it. Thus, this Court also declines to consider the Notice of Claim.

---

[3] This Court is also mindful that the at-issue property appears to be listed in two vouchers, of which there are different versions, including an "ADA Copy," a "Property Clerk Copy," and a "Prisoner/Finder/Owner Copy." (See Reilly Decl. Exs. C, D, F; Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 115 ("Pl.'s Opp."), Ex. A.) Some of these versions appear to be missing pages, and some apparently omit the instructions on procedures to retrieve property. Without knowing which version(s) of the voucher(s) Tammaro received or when, this Court cannot be certain as to which voucher the Complaint references.

II.    Property Claims

Section 1983 provides a private right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  As an initial matter, neither side disputes that Detective Breslin and the NYPD property clerks are "persons" within the meaning of § 1983, or that they were acting under the color of state law during the relevant time.  Instead, the Moving Defendants contend that Tammaro fails as a matter of law to allege a constitutional violation.

A.    Fourteenth Amendment Due Process

The Fourteenth Amendment prohibits states and municipalities from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, sec. 1.  These "'cryptic and abstract'" words generally mean that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'"  Dusenbery v. United States, 534 U.S. 161, 167 (2002).  To adequately allege a violation of procedural due process, "a plaintiff must plead facts sufficient to give rise to a claim that he was deprived of his property without 'constitutionally adequate pre- or post-deprivation process.'"  Ahlers v. Rabinowitz, 684 F.3d 53, 62 (2d Cir. 2012).  Even a "temporary, nonfinal deprivation of

10

property" is a deprivation within the meaning of the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67, 97 (1972).

1. Parratt and its Progeny

As a general matter, "[w]hen reviewing alleged procedural due process violations, the Supreme Court has distinguished" between (1) claims based on random and unauthorized acts by state employees; and (2) claims based on established state procedures. Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996). The former are governed by the Supreme Court's decision in Parratt v. Taylor and its progeny. Under the rule pronounced in Parratt and clarified by Hudson v. Palmer and Daniels v. Williams, "when a meaningful post-deprivation remedy [is] available at state law, a state employee's . . . deprivation of a prisoner's property [is] not actionable under § 1983." Parratt v. Taylor, 451 U.S. 527, 544 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986) (applying Parratt's rule to negligent deprivations); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (extending the Parratt rule to intentional deprivations); Daniels, 474 U.S. at 330-32 (holding that mere negligence by a state official does not constitute a due process violation while leaving intact Hudson and the general Parratt rule). A meaningful state post-deprivation remedy satisfies due process when deprivations are due to random and unauthorized acts because "predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." Hudson, 468 U.S. at 533.

On the other hand, "where the property deprivation is effected pursuant to an established state procedure," a post-deprivation state remedy will not itself satisfy due process. Hudson, 468 U.S. at 534; see also Rivera-Powell v. N.Y.C. Bd. of Elecs., 470 F.3d 458, 465 (2d Cir. 2006) (adding that "when the deprivation is pursuant to an established state procedure, the

11

state can predict when it will occur and is in the position to provide a pre-deprivation hearing"). Thus, the Second Circuit has held that "an adequate post-deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized," and not "where the deprivation complained of results from the operation of established state procedures." Alexandre v. Cortes, 140 F.3d 406, 409 (2d Cir. 1998) (quotation marks omitted).

2. Due Process Challenges to the City's Property Retrieval Procedures

In addressing Tammaro's due process challenge to the City's procedures on the return of vouchered property, this Court is guided by a trilogy of Second Circuit opinions. In McClendon, the seminal 1972 case, the Second Circuit considered the constitutionality of § 435-4.0 of the New York City Administrative Code,[4] which governed the handling and disposition of seized property held by the property clerk. See McClendon v. Rosetti, 460 F.2d 111, 113 (2d Cir. 1972). The McClendon panel concluded that § 435-4.0 violated constitutional due process in two respects: (1) by not providing meaningful notice to prisoners as to how to recover their property; and (2) by impermissibly placing the burden of establishing lawful ownership, possession, and use on the claimant to "establish that he has a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner." Alexandre, 140 F.3d at 409 (citing McClendon, 460 F.3d at 115). By placing the onus on claimants to initiate recovery proceedings, § 435-4.0 was held unconstitutional as applied to claimants with seized non-contraband property that was (1) unrelated to any criminal proceeding; (2) related to a criminal proceeding that had been

---

[4]    Although this provision was subsequently renumbered as § 14-140, "it has not been materially changed since McClendon." Alexandre v. Cortes, 140 F.3d 406, 409 n.6 (2d Cir. 1998).

terminated; or (3) no longer needed as evidence in a criminal proceeding. <u>McClendon</u>, 460 F.3d at 116.

Three years after <u>McClendon</u>, Judge Morris Lasker issued an order (the "Lasker Order") that "established constitutional procedures for the disposition of property held by the clerk, and set forth the method by which notice of those procedures would be given to arrestees from whom such property was seized." <u>Alexandre</u>, 140 F.3d at 409. The Second Circuit summarized the Lasker Order as follows:

> Under Judge Lasker's order, a voucher must be given to an arrestee for non-contraband property seized. The voucher must also give notice of the procedures to be followed to recover such property. A claimant must make a demand upon the property clerk for his property or money within 90 days of the earlier of (i) the termination of the criminal proceeding, or (ii) the issuance by the District Attorney of a release indicating that the property or money is not needed as evidence. The City must, within ten days of a timely demand, either return the item or items in question or initiate judicial action to authorize their continued detention. In the absence of a timely demand, the property clerk may dispose of the property.

<u>Butler v. Castro</u>, 896 F.2d 698, 702-03 (2d Cir. 1990).

<u>Butler</u>—the second in the trilogy—dealt with whether the City provided adequate notice of the procedures set forth in the Lasker Order to retrieve property seized during an arrest. <u>Butler</u>, 896 F.2d at 699. There, the plaintiff alleged that he never received the voucher to which he was entitled that included the procedures outlined in the Lasker Order to be followed to recover his property. <u>Butler</u>, 896 F.2d at 699. The <u>Butler</u> panel reasoned that because the voucher provided the sole means for an arrestee to know of the proper recovery procedures, the City's ongoing failure to amend the Administrative Code—the only publicly available notice of procedures to recover property—to conform to the Lasker Order misled arrestees who did not receive vouchers to believe that the <u>McClendon</u> procedures did not exist. <u>Butler</u>, 896 F.2d at

703. Thus, the Court of Appeals permitted the plaintiff's due process claim to proceed, concluding that "the harm he has suffered is the result of an established procedure of misinforming claimants who do not receive notice by voucher of the prevailing procedures for recovery." Butler, 896 F.2d at 703-04 (adding that "Parratt deal[t] with the inevitable losses of property that will occur in any system in which large numbers of persons are arrested or incarcerated," and that [n]othing in that decision indicates that due process is satisfied where a state notifies potential claimants of procedures to reclaim seized property by a method that will fail in some cases while giving public notice of a procedure that no longer exists").

After Butler, the City amended the Rules of the City of New York (the "City Rules") to "substantially conform to the procedures outlined by Judge Lasker." Herbert v. City of New York, 2012 WL 3779230, at *3 n.4 (E.D.N.Y. Aug. 30, 2012) (collecting cases). Nonetheless, § 14-140 of the Administrative Code remained (and currently remains) unchanged. In the wake of the 1991 amendments, the Second Circuit decided the final installment in the trilogy, Alexandre v. Cortes. In relevant part, the plaintiff in that case received a property voucher for seized jewelry. Alexandre, 104 F.3d at 413. However, the Second Circuit reversed the district court's grant of summary judgment, holding that there was a genuine factual dispute as to whether the voucher actually contained the information necessary to satisfy the notice requirements of the Due Process Clause. Alexandre, 104 F.3d at 414. Ultimately, the Second Circuit remanded the matter to the district court to consider whether the procedures set forth in the City Rules complied with due process, and if so, whether the City Rules provided adequate notice of the procedures to claimants.[5] See Alexandre, 104 F.3d at 414.

---

[5] To date, the Second Circuit has not addressed the question of whether the City Rules themselves provide constitutionally adequate notice. While some courts in this Circuit have suggested that the City Rules do not

Thus, lower courts in this Circuit adjudicating similar due process challenges have held that "to state a valid due process claim against the City, a plaintiff must allege that the City (1) arrested him and seized his property; (2) that it did not give him a voucher with the constitutionally required notice printed on it; (3) that it did not otherwise notify the plaintiff of the procedures he could follow to reclaim his property; and (4) that the plaintiff was deprived of the property as a result[6]."  Frith v. Hill, 2009 WL 3073716, at *12 (S.D.N.Y. Sept. 23, 2009); see also Palacio v. City of New York, 489 F. Supp. 2d 335, 341 (S.D.N.Y. 2007) (allowing plaintiff to proceed with due process claim on allegations that "he was not provided with a voucher, he was unable to learn of the procedures, and he was deprived of his property as a result").

3.  Application

Against this backdrop, this Court addresses the merits of Tammaro's claims against the City, Detective Breslin, and the property clerks.

a.  The City

Taking the allegations in the Complaint as true, Tammaro has adequately stated a § 1983 due process claim against the City.[7]  First, he alleges that he was arrested and that his property was seized, which the Moving Defendants do not seriously dispute.  The Complaint also alleges that Tammaro never received a copy of the voucher until after his property had already been destroyed, and long after the basis for retaining his property had expired.  Tammaro also

---

because the procedures set forth therein conflict with the Administrative Code, e.g., Frith, 2009 WL 3073716, at *5, that question is not before this Court.

[6]    Where there has been an arrest "prior to, simultaneous with, or subsequent to the taking or obtaining of the property," whether the property has been categorized as arrest evidence or investigatory property is irrelevant to whether the arrestee is entitled to a voucher.  See 38 R.C.N.Y. § 12-32(d).

[7]    These allegations are also sufficient to state a municipal liability claim under Monell.  See, e.g., Palacio, 489 F. Supp. 2d at 341-42; cf. Alexandre, 140 F.3d at 412 n.9.

adequately avers that he did not receive any other notice of how to retrieve his property or that his property could be destroyed. Finally, the Complaint indicates that the failure to provide him with adequate notice, whether through a voucher or otherwise, resulted in his inability to retrieve property that he was entitled to recover.

In support of their motion to dismiss, the Moving Defendants advance three primary arguments, none of which are persuasive. First, they claim that the majority of Tammaro's due process claim is moot because the two property vouchers they submitted suggest that 15 out of 17 items had been recovered. But based on this Court's conclusion that Tammaro's due process claim is based on established municipal procedures, the constitutional violation occurred when the City retained Tammaro's property, after it was no longer needed as evidence, without due process of law—i.e., failing to provide constitutionally adequate notice of the recovery procedures. Cf. Zinermon v. Burch, 494 U.S. 113, 125 (1990) (explaining that for procedural due process claims, the constitutional violation "is not complete unless and until the State fails to provide due process"). That Tammaro may eventually have received some—or even all—of his property back does not vitiate his § 1983 claim. See Victory v. Pataki, 814 F.3d 47, 63 n.14 (2d Cir. 2016) (noting that "[o]nce a cause of action for a constitutional violation accrues, nothing that the state does subsequently can cut off the § 1983 claim" (citation and quotation marks omitted)).

The Moving Defendants also assert that Tammaro's failure to pursue his state-law post-deprivation remedies or to challenge the inadequacy of those remedies bars his due process claim. Perhaps recognizing that this argument only holds water if the deprivation without due process results from random and unauthorized acts, the Moving Defendants argue that the deprivation was effected by Detective Breslin's random and unauthorized failure to provide a

voucher.  But reading the Complaint in context, the gravamen of Tammaro's due process claim

is that the City failed to provide notice of the procedures by which to recover his property under

McClendon by failing to provide him with a voucher and not providing any other adequate

public notice.  Because his claims arise out of established procedures, Tammaro need not allege

that he had pursued his state-law post-deprivation remedies or that they were inadequate.

Third, the lion's share of the Moving Defendants' argument is that in spite of

Tammaro's allegations that he had no actual notice of the prevailing recovery procedures, he had

constructive notice.  First, the Moving Defendants assert that § 12-33 requires the NYPD to post

notices setting forth recovery procedures in station houses, booking facilities, and courthouse

holding areas.  While courts have acknowledged that a conspicuously posted sign may provide

constructive notice, e.g., Bord v. Rubin, 1998 WL 420777, at *3 (S.D.N.Y. July 27, 1998), the

record before this Court says nothing about whether the notices required by § 12-33 were

actually posted in the facilities in which Tammaro was incarcerated or whether they were posted

in areas where Tammaro would likely have seen them.  At this stage, this Court cannot, as a

matter of law, find that § 12-33 provided him with constructive notice of the relevant procedures.

The Moving Defendants also argue that Tammaro had notice based on his

inclusion of several pages of property vouchers in his First Amended Complaint, filed on

October 27, 2015.  But the import of this contention is only that Tammaro possessed the property

voucher before the date that he alleges he first received the vouchers.  Even if that were true, he

alleges that the NYPD destroyed his property on October 9, 2015.  Thus, that Tammaro may

have received the property voucher after his property was destroyed—and long after his property

was no longer needed as evidence—is of no moment.  Moreover, as the Moving Defendants

recognize, the pages that Tammaro attaches to the First Amended Complaint do not include the

17

page containing the instructions on how to recover property. Their conjecture that the voucher that he received "likely included instructions for recovery of property" is too slender a reed on which to find constructive notice. (See Defendants' Memo. of Law in Supp. of their Mot. to Dismiss, ECF No. 111 ("Defs' Memo."), at 11.)

Finally, the Moving Defendants contend that Tammaro had constructive notice of the relevant procedures based on his allegations that the criminal court judge instructed the prosecutors to provide a district attorney's release if they did not intend to use the property at trial, and that Tammaro had designated certain individuals to retrieve his property. But procedural due process requires "<u>meaningful</u> notice of the procedures" for recovering vouchered property. <u>See</u> <u>Alexandre</u>, 140 F.3d at 409 (emphasis added). Absent any indication that, for example, the criminal court judge informed Tammaro of what further steps he needed to take after receiving the district attorney's release, that isolated directive to the prosecutor is hardly sufficient to provide meaningful notice. Similarly unavailing is the Moving Defendants' reliance on Tammaro's designation of individuals to recover his property. Drawing all inferences in Tammaro's favor, the immediately preceding paragraph in the Complaint suggests that Tammaro designated these individuals not based on his own understanding of the procedures to follow, but only at the direction of the prosecutor.[8] (See Compl. ¶¶ 26-27.)

* * *

Constructive notice aside, this Court entertains serious doubts that the recovery procedures set forth in the City Rules comport with the requirements of the Due Process Clause

---

[8] To show constructive notice, the Moving Defendants attempt to rely on Tammaro's filing of a notice of claim on September 6, 2013 regarding other property that had been vouchered as part of a prior arrest. The notice of claim, which the Moving Defendants attach as Exhibit G, is outside the bounds of this motion to dismiss.

as applied to Tammaro.  This Court accepts as true the allegation that Tammaro's property was vouchered as investigatory evidence, which appears to comport with the voucher that he attached to his First Amended Complaint.  But the Complaint—and the search warrant application that Tammaro filed along with his First Amended Complaint—also raises the inference that the seized property was in fact arrest evidence, which is defined by the City rules as property seized "prior to, simultaneous with, or subsequent to an arrest because of its relation to the matter for which the person has been arrested."  38 R.C.N.Y. § 12-31.

But this distinction makes a difference because the recovery procedures—and by extension, notice of the recovery procedures—differ.  <u>Cf.</u> 38 R.C.N.Y. § 12-01 (stating that the "classification of the property . . . determines the documentation the claimant must provide in order to gain possession").  In relevant part, arrest evidence requires a district attorney's release, <u>see</u> 38 R.C.N.Y. § 12-35(b), the procedures for which are located in § 12-34.  On the other hand, property vouchered for investigation requires the claimant to obtain a written release from the investigating officer.  38 R.C.N.Y. § 12-06.  As an additional gloss, if there has been an arrest "prior to, simultaneous with, or subsequent to" seizing the property, then an arrestee need not obtain a district attorney's release to recover investigatory property.  38 R.C.N.Y. § 12-35(a); <u>see also</u> 38 R.C.N.Y. § 12-38.  In this morass of regulations, it is entirely conceivable that arrestees who are untrained in the law may foreseeably be misled about what category their property falls in and thus, which procedures to follow—all at the risk of the eventual destruction of their property.

b.  <u>Individual Defendants</u>

Under the well-settled law of this Circuit, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, <u>inter alia</u>, the

defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138-39 (2d Cir. 2013). Thus, for individual liability to attach, Tammaro must plausibly allege that the NYPD property clerks and Detective Breslin were personally involved in violating his procedural due process rights by depriving Tammaro of his property without providing him meaningful notice of the procedures for recovery.

The Complaint alleges that the Pearson Place Warehouse property clerk was personally involved in the deprivation of Tammaro's property by failing to release it to him. (Compl. ¶ 31.) In addition, Tammaro's averment that unnamed property clerks destroyed his property certainly alleges a deprivation of a constitutionally protected interest. (Compl. ¶ 36.) But "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon, 494 U.S. at 125 (citation omitted) (emphasis in original). Importantly, the Complaint does not allege that the Pearson Place Warehouse property clerk or the unnamed NYPD property clerks had any personal involvement in the seizure or vouchering of Tammaro's property, or in notifying arrestees of the procedures for recovering property. Thus, because Tammaro has not alleged that the NYPD property clerks were personally involved in the constitutional violation, his claims against the NYPD property clerks are dismissed.

While the allegations relating to Detective Breslin present a closer call, this Court also concludes that Tammaro has not alleged Detective Breslin's personal involvement. Under the law of this Circuit, a defendant's personal involvement may be shown by "direct participation," which "requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering [the

conduct] illegal.'"  <u>Victory</u>, 814 F.3d at 67 (citing <u>Provost v. City of Newburgh</u>, 262 F.3d 146,

155 (2d Cir. 2001)).  To be sure, the question of what conduct may constitute personal

involvement in the context of a <u>Butler</u>/<u>Alexandre</u> due process claim is unsettled in this Circuit.

<u>See</u> <u>Kneitel v. Danchuk</u>, 2007 WL 2020183, at *9 n.6 (E.D.N.Y. July 6, 2007).  In this Court's

view, however, a plaintiff should at minimum allege a defendant's intentional participation in

failing to provide notice and knowledge that the plaintiff did not receive notice of the procedures

to retrieve his property.

Here, Tammaro alleges that Detective Breslin was the officer who vouchered the

evidence.  (<u>See</u> Compl. ¶¶ 20-21.)  But the Complaint is bereft of allegations as to his role or

responsibility in providing vouchers (or other notice) to Tammaro that may give rise to an

inference he knew Tammaro did not receive notice.  Therefore, Tammaro has not alleged

sufficient facts to show that Detective Breslin was personally involved in the deprivation of his

procedural due process rights, and the Property Claims against Detective Breslin are dismissed.[9]

B.  <u>Fourth Amendment</u>

Alternatively, Tammaro proffers a Fourth Amendment claim, relying on dicta by

the Second Circuit that certain courts "have ruled that the government may retain seized property

for a reasonable time before instituting criminal proceedings," but that the need for continued

retention—and the prosecution's assertion that evidence is necessary for a criminal

investigation—should be evaluated for reasonableness in light of less drastic means.  <u>Krimstock</u>

<u>v. Kelly</u>, 464 F.3d 246, 251 (2d Cir. 2006).  According to Tammaro, the Complaint thus states a

---

[9]     Based on the conclusion that the Complaint fails to allege personal involvement in a constitutional violation
by Detective Breslin or the NYPD property clerks, this Court need not analyze whether the individual defendants are
entitled to qualified immunity.

Fourth Amendment claim based on allegations that the NYPD unreasonably failed to return property that it had no intention of using.

Tammaro's arguments are foreclosed by applicable Second Circuit precedent. As an initial matter, he does not dispute that the Second Circuit has held that "[w]here . . . an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004). Instead, he attempts to surmount Shaul by arguing that Krimstock implicitly abrogated Shaul's Fourth Amendment holding. But Krimstock does not sweep as far as Tammaro suggests. In Krimstock, the Second Circuit considered the constitutionality of allowing a district attorney to unilaterally decide to retain as potential evidence a vehicle seized pursuant to a warrantless arrest. See Krimstock, 464 F.3d at 248. In balancing the Mathews v. Eldridge factors, the panel concluded that constitutional due process required a neutral fact-finder to review a prosecutor's decision to retain a vehicle as potential evidence, citing the "importance of a vehicle to an individual's ability to work and conduct the affairs of life" and the "serious harm thus resulting from the undue retention of a vehicle by the government." Krimstock, 464 F.3d at 255. The import of Krimstock's Fourth Amendment holding is that the review by the neutral fact-finder need not be a "full-dress adversarial hearing," which does nothing to undermine Shaul. See Krimstock, 464 F.3d at 253.

In a society dependent on technology, computers and hard drives are crucial to daily life. But these concerns—as in Krimstock—sound in the factors that a court weighs in analyzing whether a deprivation of property satisfies constitutional due process, not whether the seizure was reasonable under the Fourth Amendment. As the Second Circuit reaffirmed in a post-Krimstock decision, "'the subjective motivations of the individual officers . . . has no

bearing on whether a particular seizure is unreasonable under the Fourth Amendment,' and where . . . 'an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." Ahlers, 684 F.3d at 62 (internal citations and second-order quotation marks omitted). Indeed, "[t]o the extent the Constitution affords . . . any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process." Ahlers, 684 F.3d at 62 (quotation marks omitted) (citing Shaul, 363 F.3d at 187). Accordingly—and without deciding whether the NYPD's initial seizure of Tammaro's property pursuant to a search warrant comports with the Fourth Amendment—his Fourth Amendment claim based on the NYPD's failure to return his property is dismissed.

III.    Prison Abuse Claims

The Complaint also asserts claims based on physical violence, verbal harassment, and discard of Tammaro's belongings that he endured while incarcerated at Rikers Island.[10] As with the Property Claims, the Moving Defendants do not contend that the Rikers Island corrections officers are not "persons" under § 1983 or that they did not act under color of state law. Rather, they urge that the Prison Abuse Claims should be dismissed for failure to state a

---

[10]    The Prison Abuse Claims are brought against unnamed Rikers Island corrections officers who are not among the Moving Defendants. But courts have considered the sufficiency of a claim even against non-moving defendants sua sponte, "as long as the plaintiff has been given an opportunity to be heard." See Sonds v. St. Banrnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 313 (S.D.N.Y. 2001) (citing Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991)). Accordingly, this Court considers the sufficiency of the Prison Abuse claims insofar as they relate to the Moving Defendants' Rule 9(f) argument because Tammaro was afforded an opportunity to respond through his opposition. However, because the Moving Defendants do not address the sufficiency of the Prison Abuse claims on the merits, this Court does not consider them. Cf. Jones v. Albany Cty. Civil Serv. Comm'n, 985 F. Supp. 280, 283 (S.D.N.Y. 1997) (citing Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council, 857 F.2d 55, 65 (2d Cir. 1988)) (court cannot dismiss an action for failure to state a claim based on grounds not raised or briefed by parties).

claim based on Tammaro's failure to satisfy the dictates of Rule 9(f) of the Federal Rules of Civil Procedure.

Rule 9(f) provides that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f). The thrust of the Moving Defendants' argument is that the Complaint fails to allege with sufficient particularity the dates, times, or frequency of his injuries. But unlike other subsections of Rule 9 that require certain matters to be pleaded with particularity, Rule 9(f) imposes no such requirement with respect to time and place for a pleading to be sufficient. See Rosen ex rel. Egghead.com v. Brookhaven Capital Mgmt. Co., 179 F. Supp. 2d 330, 334 (S.D.N.Y. 2002) ("Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they are actually interposed." (citations omitted)). Rather, it merely "permits consideration of allegations of time and place when the sufficiency of the complaint is challenged, and has thus been used primarily as a screening device" for time-barred claims "where the averments in the complaint make clear that the claim is time-barred." Matthew v. United States, 452 F. Supp. 2d 433, 446 (S.D.N.Y. 2006) (citing Rosen ex rel. Egghead.com, 179 F. Supp. 2d at 334; Hoover v. Langston Equip. Assocs., Inc., 958 F.2d 742, 744 (6th Cir. 1992)). Put differently, Rule 9(f) simply allows a limitations defense to be expeditiously raised in a Rule 12(b)(6) motion—as opposed to an answer—when it is "apparent from the face of the complaint that the time limit for bringing the claim has passed." Hoover, 958 F.2d at 744 (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1380 (West 1990)).

Here, by contrast, Rule 9(f) does not provide a basis for dismissal for untimeliness. With respect to time and place, the Complaint alleges only that the acts giving rise to the Prison Abuse claims occurred while Tammaro was incarcerated at Riker's Island—which

could be March 5, 2013, July 26, 2016, or some time in between. If the alleged abuse occurred

after January 31, 2014, for example, then the Prison Abuse Claims may be timely, which the

Moving Defendants appear to recognize. See Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir.

2015) ("Section 1983 actions in New York are subject to a three-year statute of limitations,

running from the time a plaintiff knows or has reason to know of the injury giving rise to the

claim." (internal citations and quotation marks omitted)). Because the face of the Complaint

does not make it clear that the Prison Abuse Claims are time-barred,[11] dismissal on timeliness

grounds under Rule 12(b)(6) is inappropriate.

Although this Court does not dismiss the Prison Abuse claims at this juncture, two

final observations are in order. First, while the Moving Defendants' objection to the temporal

overbreadth of the Prison Abuse Claims may well be legitimate, the proper procedural

mechanism is a motion under Rule 12(e) for a more definite statement if the allegations are so

vague or ambiguous that they cannot reasonably prepare a response. See Matthew, 452 F. Supp.

2d at 446. Nonetheless, in the interest of judicial efficiency, Tammaro should endeavor to

provide defendants with time and place information to assist them in identifying the John Doe

corrections officers. Should further judicial intervention be necessary, see Valentin v. Dinkins,

---

[11]     Curiously, the Moving Defendants also claim that without knowing the dates of the alleged injuries, they are unable to determine whether the Prison Abuse Claims relate back to the filing of the original complaint. As an initial matter, Tammaro does not contend that the Prison Abuse Claims should relate back to the date of the original complaint. And in any event, "the test is not contemporaneity but rather adequacy of notice." Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir. 1973); see also Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006) (explaining that the "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading"). Here, because the Prison Abuse Claims are separate legal claims arising from a separate factual core involving separate defendants—which the Moving Defendants' brief openly acknowledges—any relation-back concerns are unfounded. See United States ex rel. Kolchinsky v. Moody's Corp., 162 F. Supp. 3d 186, 199 (S.D.N.Y. 2016) ("[E]ven where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct' set of factual allegations will not relate back.'" (internal quotation marks omitted)).

121 F.3d 72, 76 (2d Cir. 1997), the parties should raise those issues at the status conference as directed below.

CONCLUSION

Based on the foregoing, the Moving Defendants' motion to dismiss is granted in part and denied in part. Specifically, the motion is granted as to the Property Claims against Detective Breslin and the NYPD property clerks and denied as to (1) the Property Claims against the City to the extent they are grounded in the Fourteenth Amendment; and (2) the Prison Abuse claims against the Rikers Island corrections officers.

The parties are directed to appear on April 27, 2018 at 3:30 p.m. for a status conference. The Clerk of Court is directed to terminate the motion pending at ECF No. 111.

Dated: March 30, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.